UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |  |
|---|---|---|
| PHYLLIS STARNES and GLENN STARNES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:12-CV-302-PLR-CCS |
| WAL-MART STORES EAST, LP, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the parties' respective <u>Daubert</u> motions. The parties appeared before the undersigned on June 30, 2014, for a hearing to address the challenges to each side's experts. The Court finds that the <u>Daubert</u> motions are now ripe for adjudication, and for the reasons set forth herein, they will be **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND**

Plaintiff Phyllis Starnes alleges that she suffered personal injuries as a result of merchandise falling on her when she was a patron at Defendant's store in Jefferson County, Tennessee, on June 30, 2011. Specifically, she alleges that she was looking at merchandise in the store and bent over to view items on a lower shelf. Ms. Starnes alleges that while she was in this position, she was struck in the head by a 32 ounce bottle of shampoo. It is estimated that the bottle of shampoo fell approximately five inches before impact. Ms. Starnes maintains that the

bottle that struck her was dislodged from an upper shelf by employees of the Defendant who were stocking items on the same shelf from the next aisle over. Ms. Starnes alleges that, as a result of being hit by the container, she developed *inter alia* neck pain, shoulder pain, headaches, nausea, dizziness, and neurological and radicular symptoms in her upper extremities.

On May 14, 2014, both parties filed the instant Motions for <u>Daubert</u> Hearing [Docs. 21 and 22]. Defendant's motion was accompanied by a five-page memorandum; the Plaintiffs did not file a memorandum with their motion. The following day the Clerk of Court sent notice setting a <u>Daubert</u> hearing on June 17, 2014. At the request of the parties, on May 21, 2014, the Clerk of Court sent notice resetting the hearing for June 30, 2014. On June 6, 2014, the Defendant filed a Motion to Seal moving the Court to file all of the documents related to its <u>Daubert</u> challenge – including *curriculum vitae* of the physicians at issue – under seal. The Court denied this Motion to Seal on June 12, 2014, and the Court gave Defendant the option of either refiling the documents with selective redactions or presenting them to the Court at the <u>Daubert</u> hearing. On June 25, 2014, the Plaintiffs filed a memorandum in support of their Motion for <u>Daubert</u> Hearing, and on June 30, 2014, the parties presented their oral arguments at a hearing before the undersigned. No experts were present at this hearing.

This case was filed June 25, 2012, and it is set for trial on August 12, 2014.

## II. POSITIONS OF THE PARTIES

Defendant's Memorandum discusses the <u>Daubert</u> standard that should be applied to causation opinions from treating physician generally. [Doc. 21-1 at 2-4]. However, the Defendant's filings does not state, in either its Motion or their Memorandum, the names of the physicians whom it maintains should be precluded from testifying pursuant to <u>Daubert</u>. It does

2

not direct the Court to any particular portion of a deposition or any portion of a physician's expert report as being illustrative of the opinions that Defendant believes are objectionable, nor does the Memorandum apply the Daubert standard or Rule 702 to any opinions offered in this case. At the hearing, counsel for the Defendant, for the first time, represented that the Defendant challenges the potential causation testimony that could be offered by Ms. Starnes's treating physicians: William E. Snyder, Jr., M.D., and William Williams, D.O.

Plaintiffs state that they have filed a Motion for Daubert Hearing "to avoid waiver of Plaintiffs' right to a Daubert challenge." [Doc. 22 at 1]. Plaintiffs submit that, if Defendant challenges the testimony offered by Ms. Starnes's treating physicians, then the Plaintiffs challenge any potential causation testimony to be offered by Defendant's consulting physician James A. Killeffer, M.D. Plaintiffs argue that the treating physicians have had the advantage of years of treatment, whereas Dr. Killeffer has only reviewed Ms. Starnes's medical records. As with Defendant's Motion, the Plaintiffs' Motion offers little in the way of specific testimony challenges, and at the hearing, the Plaintiffs failed to direct the Court to any specific testimony that they challenged. In fact, at the hearing, counsel for the Plaintiffs conceded that, if Plaintiff's physicians – Dr. Williams and Dr. Snyder – were permitted to testify, then his challenge to Dr. Killeffer should be withdrawn, and Dr. Killeffer should be permitted to testify.

### III.   ANALYSIS

The parties purport to present challenges pursuant to Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

3

> issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. The Daubert standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176–77 (6th Cir. 2009).

The Rule 702 inquiry as "a flexible one," and the Daubert factors do not constitute a definitive checklist or test. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138-39 (1999)(citing Daubert, 509 U.S. at 593). "[R]ejection of expert testimony is the exception, rather than the rule," In re Scrap Metal Antitrust Litig., 527 F.3d 517, 530 (6th Cir. 2008) (citing Fed. R. Evid. 702 advisory committee's note, 2000 amend.), and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," Daubert, 509 U.S. at 596.

"Generally a treating physician can provide expert testimony regarding a patient's illness, the appropriate diagnosis, and the cause of the illness even if the physician is not among the world's foremost authorities on the matters." Thomas v. Novartis Pharm. Corp., 443 Fed. App'x 58, 61 (6th Cir. 2011) (citing Gass v. Marriott Hotel Servs., Inc., 558 F.3d 419, 426 (6th

Cir.2009); Fielden v. CSX Transp., Inc., 482 F.3d 866, 870 (6th Cir. 2007)). However, such opinions are must fulfill the Daubert standard and comply with Rule 702 of the Federal Rules of Civil Procedure, and when a treating physician proposes to offer testimony regarding the causation of an ailment or condition, differential diagnosis is the proper basis for determining the cause of the medical condition, Best, 563 F.3d at 178.

The Court of Appeals for the Sixth Circuit has held that a district court is not obligated to conduct a Daubert hearing. Jahn v. Equine Services, PSC, 233 F.3d 382, 393 (6th Cir. 2000). Conversely, the district court should not make a Daubert determination when the record is not adequate to the task. Id.

### A. *Development of Arguments*

As an initial matter, the Court finds that prior to the hearing on June 30, 2014, the parties' written filings were woefully insufficient. As the undersigned stated at the hearing, the filings failed to identify: the experts challenged, the testimony challenged, or the basis of the challenge. Such incomplete filings inhibits the Court's attempts to properly prepare for a Daubert hearing and arguably leave the Court without a sufficient record upon which to base its decision. Jahn, 233 F.3d at 393. Moreover, Plaintiffs filed their Memorandum well over a month after the filing of their Motion for Daubert Hearing and just two working days prior to the hearing on these issues. Such disconnect between the request for relief and the support for the request for relief is unacceptable, and again, it inhibits the Court's attempts to prepare for the hearing.

Notwithstanding, the Court finds that the presentation of oral arguments and the receipt of exhibits at the hearing on June 30, 2014, has yielded a record sufficient for making a Daubert determination.

## B. Experts Challenged

The Court will address each of the physicians challenged in turn.

### 1. William E. Snyder, Jr., M.D.

William E. Snyder, Jr., M.D., is a neurosurgeon who has been treating Ms. Starnes since 2012. He has testified that, within a reasonable degree of medical certainty, Ms. Starnes's neck and back pain was caused by the shampoo bottle falling on her at the Defendant's store. See Snyder Depo. at 25-26. In so testifying, Dr. Snyder considered the fact that did not produce the symptoms that Ms. Starnes complained of after her accident. Dr. Snyder used this information to "rule out" Ms. Starnes's prior conditions as causes of her pain. Additionally, Dr. Snyder relied upon his experience with injuries related to hits to the back of the head.

Dr. Snyder's name is not mentioned in Defendant's Memorandum, and as stated above, there is no specific challenge to Dr. Snyder's causation testimony. Rather, Defendant argues generally that the testimony should be excluded because it relies upon "after this, because of this," *i.e. post hoc ergo propeter hoc fallacy*, reasoning rather than differential diagnosis. The Defendant reiterated this position at the hearing. Additionally, at the hearing, the Defendant argued that Dr. Snyder's testimony should be disregarded because it is not believable.

The Court finds that Dr. Snyder is well-qualified to testify as to Ms. Starnes's injuries and the potential causes of such. The Court has considered the Defendant's critiques of Dr. Snyder's opinion, but the Court finds that it would not be appropriate to exclude Dr. Snyder's testimony from trial based upon these critiques.

First, the Court finds that the Defendant has not challenged the qualifications of Dr. Snyder, nor has the Defendant challenged the data or observations on which Dr. Snyder bases his opinion.

Second, the Court finds that the Defendant's unsupported and disputed position that a finder of fact would not believe Dr. Snyder's testimony as a matter of law is not an appropriate basis for excluding his testimony under Daubert or Rule 702. The Court is charged with examining qualifications and the science underlying the opinions. The jury may or may not find Dr. Snyder's opinion to be credible, but that possibility is not a basis for excluding expert testimony under Daubert. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," Daubert, 509 U.S. at 596.

Finally, Defendant appears to take issue with the application of scientific principles to the data known to Dr. Snyder through his treatment of Ms. Starnes arguing that he did not conduct an appropriate differential diagnosis. The Court finds that there are facts and evidence demonstrating that Dr. Snyder's methodology meets the minimum threshold for admissibility. See Best, 563 F.3d at 180. Dr. Snyder objectively ascertained the nature of Ms. Starnes's injury through MRIs, diagnostics at her visits with him, and his observations during surgery. See Snyder Depo. at 25-27. He then "ruled in" one or more causes of the injury using a valid methodology. Specifically, he "ruled in" the trauma from the accident at Defendant's store. Dr. Snyder engaged in standard diagnostic techniques to rule out alternative causes to reach a conclusion as to the likely cause of the pain. Based upon the foregoing, the Court finds that Dr. Snyder's methodology is sufficiently reliable under Rule 702 and meets the minimum threshold for admissibility, and the Court finds that the Defendant has not demonstrated that exclusion of his testimony is appropriate under Daubert.

2.   *William Williams, D.O.*

William Williams, D.O., is a primary care physician who has been treating Ms. Starnes since 2005. He has testified that, within a reasonable degree of medical certainty, Ms. Starnes's

7

neck and back pain was caused by the shampoo bottle falling on her at the Defendant's store. See Williams Depo. at 29. In so testifying, he considered the fact that Ms. Starnes did not complain of this acute pain in treatment visits with Dr. Williams prior to the accident. He also considered the fact that her previous diagnoses, like fibromyalgia, did not produce the symptoms that Ms. Starnes complained of after her accident. Dr. Williams used this information to "rule out" Ms. Starnes's prior conditions as causes of her pain. Additionally, Dr. Williams relied upon his experience with injuries related to falling objects that he had obtained through his years of service in the armed forces.

Again, Dr. Williams's name is not mentioned in Defendant's Memorandum, and as stated above, there is no specific challenge to any portion of Dr. Williams's causation testimony. Generally, Defendant again argues that the testimony should be excluded because it relies upon "after this, because of this," *i.e. post hoc ergo propeter hoc fallacy*, reasoning rather than differential diagnosis. The Defendant reiterated this position at the hearing. Additionally, at the hearing, the Defendant argued that Dr. Williams's testimony should be disregarded because it is not believable.

The Court finds that Dr. Williams is well-qualified to testify as to Ms. Starnes's injuries and the potential causes of such. Court has considered the Defendant's critiques of Dr. Williams's opinion, but the Court finds that it would not be appropriate to exclude Dr. Williams's testimony from trial based upon these critiques.

First, the Court finds that the Defendant has not challenged the qualifications of Dr. Williams, nor has the Defendant challenged the data or observations on which Dr. Williams bases his opinion.

Second, the Court finds that the Defendant's unsupported and disputed position that a finder of fact would not believe Dr. Williams's testimony as a matter of law is not an appropriate basis for excluding his testimony under Daubert or Rule 702. The Court is charged with examining qualifications and the science underlying the opinions. As stated above, the possibility that a jury may not credit certain testimony is not a basis for excluding expert testimony under Daubert. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," Daubert, 509 U.S. at 596.

Finally, Defendant apparently again takes issue with the application of scientific principles to the data known to Dr. Williams through his treatment of Ms. Starnes. The Court finds that there are facts and evidence in the record demonstrating that Dr. Williams's methodology meets the minimum threshold for admissibility. See Best, 563 F.3d at 180. Dr. Williams objectively ascertained the nature of Ms. Starnes's injury through diagnostics at her visits with him. See Williams Depo. 27-30. He then "ruled in" one or more causes of the injury using a valid methodology; in this case, he "ruled in" the trauma from the accident at Defendant's store. Dr. Williams engaged in standard diagnostic techniques to rule out alternative causes – such as Ms. Starnes's fibromyalgia – to reach a conclusion as to the likely cause of the pain. Based upon the foregoing, the Court finds that Dr. Williams's methodology is sufficiently reliable under Rule 702 and meets the minimum threshold for admissibility, and the Court finds that the Defendant has not demonstrated that exclusion of his testimony is appropriate under Daubert.

3.  *James A. Killeffer, M.D.*

James A. Killeffer, M.D., is a neurosurgeon who the Defendant has hired to review Ms. Starnes's medical records and opine as to whether the accident at Defendant's store caused Ms. Starnes's alleged neck and back injury. As an initial matter, both parties agree that a portion of Dr. Killeffer's report relies upon medical records of a patient other than Ms. Starnes. At the hearing, the parties agreed that the following testimony, with the line drawn through it, should not be admitted at trial:

> ...disorder, chronic fatigue syndrome, and fibromyalgia/fibrositis. In 2007, Ms. Starnes reported pain in her left shoulder and trapezius pain that had started that morning. She denied injury. She rated her pain 10/10. An x-ray of her left shoulder was unremarkable. ~~In 2004, Ms. Starnes had neck pain and moderately limited cervical range of motion. Cervical x-rays showed degenerative change at C5-6 with disc space narrowing, anterior and posterior osteophytes, and narrowing of the neural foramina with osteophyte intrusion. She was diagnosed with cervical degenerative disc disease and cervical spondylosis.~~ Based on the physical therapy records that I reviewed for her recently, it appears that she has made a good recovery and is doing well.
>
> *James A. Killeffer, M.D.*

Such testimony is not relevant to this matter and must be excluded from trial. Thus, based upon the parties' agreement and the lack of relevancy, any portion of Dr. Killeffer's opinion predicated on the portion of his report marked above will be **EXCLUDED**.

With regard to the remainder of Dr. Killeffer's testimony, the Court finds that the Plaintiffs have agreed to withdraw their objections to Dr. Killeffer's testimony, based upon the Court's ruling that Dr. Snyder and Dr. Williams will not be excluded from offering causation testimony at trial. The Court could deny the Plaintiffs' challenge to Dr. Killeffer's testimony on this basis alone.

Notwithstanding, the Court has examined Dr. Killeffer's proposed testimony pursuant to the <u>Daubert</u> standard. First, the Court finds that the Plaintiff has not challenged Dr. Killeffer's qualifications. Instead, the Plaintiff has offered only a general challenge that Dr. Killeffer is not

10

as familiar with Ms. Starnes's medical history in the manner that her treating physicians are. Plaintiff also argues that Dr. Killeffer concludes that Ms. Starnes's injuries could not have occurred in the manner alleged without proper analysis.

The Court finds that Dr. Killeffer is well-qualified to testify as to Ms. Starnes's injuries and the potential causes of the injuries. The Court finds that Dr. Killeffer may offer such opinions based upon his review of Ms. Starnes's medical records, and to the extent Plaintiff argues that merely reviewing documents or medical records yields a less accurate result and opinion than that of a treating physician or than an in-person encounter, the Plaintiff may explore that issue through vigorous cross-examination. The Court has considered Dr. Killeffer's findings and conclusion. The Court finds that Dr. Killeffer conducted a differential diagnosis by reviewing Ms. Starnes's medical records including objective tests like her MRIs, considering the alleged facts of the accident, and "ruling in" degenerative changes. The Court finds that there are facts and evidence in the record demonstrating that his methodology meets the minimum threshold for admissibility. Accordingly, the Court finds that the remainder of the Plaintiffs' challenge to Dr. Killeffer's testimony is not well-taken.

## IV. CONCLUSION

Based upon the foregoing, the Court **ORDERS:**

1. Defendant's Motion for Daubert Hearing **[Doc. 21]** is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Defendant requested a Daubert hearing, that request has been **GRANTED** and the hearing has been conducted. All other requests for relief, including Defendant's request to Dr. Williams and Dr. Snyder's testimony be excluded at trial, are **DENIED**; and

2. Plaintiff's Motion for Daubert Hearing **[Doc. 22]** is **GRANTED IN PART** and **DENIED IN PART**. To the extent that Plaintiffs requested a Daubert hearing, that request has been **GRANTED** and the hearing has been conducted. Plaintiffs' request that Dr. Killeffer be excluded from offering testimony relating to medical records other than Ms. Starnes's medical records is **GRANTED**. All other requests for relief, including Plaintiffs' request that the remainder of Dr. Killeffer's testimony be excluded at trial, are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge